Our next case is Demetria Brown v. GSA, 2021-1996. Ms. Riggs, we're ready when you are. Good morning, and may it please the Court. This case is about holding the government to its promises. Demetria Brown devoted 30 years of federal service to federal service. She started working for the federal government when she was 19 years old. Not to cut short your argument, but isn't this case simply about the meaning of the word initiated? Yes, I believe it is. It does come down to that. And that initiate payment term is a term of art used in the federal sector for the MSPB and the EEOC. As the cases we've cited in our brief point out, and it's repeatedly used as it is to put the check in the mail, to tell the bank to make the payment, here to tell the third-party vendor to make the payment. And that deadline to initiate payment was 30 days after the agreement was signed, so it was August 30th of 2019. The agreement doesn't say payment shall be made. Initiate is a simple word. It means to begin. And maybe in other circumstances it does, but in this situation, initiate payment, the term of art, means to make the payment, to tell the party that is making the payment, whether it's the bank, DFAS, USDA, whoever the third-party may be that's making the payment, to put forth the payment. And in this case, that's clear from the agreement. In paragraph 2 of the agreement, it requires Ms. Brown and our firm to provide a paperwork, the ACH vendor form, within five days of the effective date of the agreement, in order to process the payment. And then the very next sentence says, payment shall be initiated within 30 days of receipt of those forms. The agency had 30 days to process the paperwork from the receipt of that initial paperwork from Ms. Brown. You think that means completed? It means completed on their end. It means they needed to do all conditions precedent on their end to make the payment and send the payment forth to the third-party for payment. Yes, and that is what the MSPB has held and found in other cases, and that is what the EEOC generally takes the meaning of the payment to be, initiate payment. So if I pay my phone bill by putting a check in the mail, could I call my phone company and say I've initiated payment? If the check is in the mail, that is initiating payment. I mean, it's just not the way I talk, so it doesn't sound natural to say it like that. And it's not natural, but it's the way these cases work, as many times these agencies use third-party vendors such as DFAS and USDA to make the payments, and so they won't guarantee the date the payment will be made. Many times when it's being processed such as back pay, they will tell DFAS or USDA to make the payment, and it will come through on the next pay date, particularly when the payee is an employee. It won't go through on a random date. It will go through on the next pay date, whenever that is after they are told to make the payment. Now you say this is a word of ah. Is there a case that interprets the word initiating as meaning completed? There's no case that interprets it as such, but there are cases that assume it is such, and that's the estate of Mary Aldred versus Department of Veterans Affairs. They use the exact same language that we use. Agency shall initiate payment, and the judge there found that the agency was in breach of its obligation to make that payment by the date as it did not fulfill all conditions precedent prior to that date. There is a similar use of it in an EEOC case. You say it did not fulfill all conditions precedent to that date. There's a fog behind that language that I can't see through. In the estate of Mary Aldred, the agency in that case needed to vendorize the payee, and they didn't do that in time to initiate payment. When you say vendorize the payee... Vendorizing the payee is the ACH form that we submitted needs to be submitted. They need to process that so that the payee is in their system so that the person can be paid. I guess what we're talking about here are situations where the actual receipt of payment to the recipient isn't... That date of receipt is not fully within control of the government here, and there's a third party in the middle. There's an intermediary, and so we don't... The government, GSA, couldn't possibly know exactly how much time it's going to take the intermediary to actually push the button to transmit the money over into Ms. Brown's account. The agency chooses to use a third party to conduct these transactions. It has been held by the board that there should be a reasonable standard, a reasonable time, and it should be conducted within a reasonable time. It's their agent, and as the principal, they're responsible for making sure that it's done in a reasonable time. And here... Is there some understanding of normal course of dealings, how long these vendors take to actually transmit the funds once they get whatever paperwork they need to get? It's usually almost immediately or the next pay date. And as the example here, once... On October 30th, once the GSA told the vendor to make the payment, it was paid the very next day on November 1st. Well, isn't there... There's actually a fourth party, isn't there? OPM is in here too, isn't there? OPM had to get involved. They're not going from the GSA to the Defense Finance Agency. So you've got two other outfits that have to participate in this exercise. Correct. And that was what had to be done prior to the initiation date, the deadline to initiate payment. So OPM did get involved eventually, and they had to get involved to sort this out. Even though the payment was initiated by November 1st, or payment was initiated October 30th is when they actually told DFAS to make the payment, they never actually completed the process until over a year later when they finally gave OPM back the annuity repayment that was due to OPM that had to be withheld from the back pay. And because they did not do that for over a year, Ms. Brown could not actually re-retire. While she had submitted her retirement paperwork pursuant to the settlement agreement,  obtained all the documentation from GSA that it was needed to process the back, to process her additional retirement annuity, and she was not even offered the opportunity to re-retire until, I believe it was November of this last year, 2021, is when she eventually got her annuity updated to reflect the additional year of service. It took two years from the time the agency made the back pay payment until they actually completed the process. I guess that's also, aside from trying to understand what does it mean for a payment to be initiated, what does initiate payment mean, there's also the question of even if there was a conclusion that they didn't initiate the payment by August 30th, Ms. Brown did get paid eventually. So, two questions. One is, can it be said to be a material breach or maybe the whole thing has been mooted because it was a little bit tardy, but the payment obligation had been fulfilled. And then secondly, when she did get the money, and we understand that the whole purpose of getting that back pay was so that she could turn right around and re-deposit it so that she could get a bigger annuity, why didn't she just do that at that time whenever she did get the money, which I think was November? And so this goes directly to the heart of it. She could not make the re-deposit on November 1st or any time thereafter, in the near future after that, because OPM did not have the records and did not have the repayment from GSA. Because GSA's repayment to OPM was so belated, because it wasn't timely done in August or before her retirement, Ms. Brown could not and did not have the option to make that repayment. I'm getting a little confused. Are you talking about a certain amount of money that's different from the back pay that she was supposed to get by August 30th? I'm talking about that part, and you're now talking about some other locus of money? There's the re-deposit, which is what Ms. Brown had to pay, and there's the repayment to OPM by the agency, which was due for her annuity that she received during the back pay period. The annuity to OPM had to be repaid, and the retirement records had to be corrected in order for her to re-retire and to receive an updated benefit. She did not even receive – she had no idea how much money she owed. OPM had to update the records and tell her how much money she owed for her to make the re-deposit, and they didn't do that until July of 2020 because they did not have the information from GSA. To the extent there was some kind of mix-up on the government's end for that, that's outside the terms of the settlement agreement, right? It is actually – the terms of the settlement agreement require the back pay to be processed pursuant to 5 CFR 550, which requires the repayment of the annuity to OPM. So that was required as part of processing the back pay, and that's required, again, for Ms. Brown to have retired under the settlement agreement. The settlement agreement required her to retire, and she could not actually retire, even though she was no longer working there. She could not retire and get her annuity until the agency completed all actions on its end, which it did not do for over a year. I'm afraid to ask more questions. The more questions I ask, the more confusing this gets. It's very convoluted. I would like to reserve my time for rebuttal, if I may. We will do that. Ms. Fleming? Good morning, Your Honors, and may it please the Court. Today we are here to consider a case, not about a series of missteps by the government, as Ms. Brown alleges, but in fact because Ms. Brown wants to remake her bargain with the government under the guise of specific terms. Well, I wouldn't go this far. To pin everything here on Ms. Brown is a bit unfair. Can we get to the meaning of initiate payment, or payment shall be initiated? Certainly, Your Honor. Did the Board here actually do an interpretation of that phrase?  The Board actually. Ms. Fleming, where? Certainly.  The Board discusses the terms of the agreement, finds that they're unambiguous, and goes on to discuss the petitioner's argument that Larry applied and explained why it does not. But the word initiated doesn't seem to be there. What kind of a construction is that? The Board found the case moot, right? The Board found that all performance had been delivered, Your Honor, and that is why it found that it was moot. But the Court also specifically discussed the term initiate payment, and it discussed. Well, that was Judge Chen's question. Then what's the answer? Your answer was referring to a couple of sentences that didn't mention the word. The closest I could find is at A5, in the middle of the page, where the paragraph begins, the agency argues that it agreed to, quote, unquote, initiate the payment of back pay, interest, and benefits by August 30th, 2019. It complied with this provision by taking steps to initiate payment prior to August 30th, 2019. Yes, Your Honor, thank you. And to me, these sentences look to me more like a summary of the agency's position in response to Ms. Brown's argument. I mean, it's underneath the heading of agency's response. So I don't know if I could go so far as to say that I should understand this summary of the agency's response as being the Board's interpretation of this key phrase of the settlement agreement. I think, Your Honor, if I could refer you again back to the top of appendix A, I think the court is then summarizing the position and finding that the parole evidence argument, which is the only argument that was being made by Ms. Brown regarding the term initiate and how to interpret it, didn't have any basis. And I think that is where the court loops back to the issue and concludes that, in fact, that the terms of the agreement, including initiate payment, were clear, recognizing that they don't actually repeat the phrase in that particular part of the opinion. All right. Well, I guess we can decide for ourselves whether or not the Board did what it was supposed to do. That's a matter. But can you tell us what is the government's interpretation of what it means to initiate payment? I mean, the phrase in the settlement agreement isn't initiating the processing of the payment. It's beginning the process of the payment. It says initiate payment, and payment is a certain kind of action. I mean, payment is money transfer. And so you're initiating the money transfer. I mean, that sounds a lot more proactive than, I don't know, opening up a file and shuffling a few papers around and then declaring on August 30th, 2019, aha, I've fulfilled my obligations. We'll see how long it takes before I fulfill all the paperwork duties so that the third-party payer vendor can actually transmit the funds. It might take days. It might take weeks. It might take years. That doesn't sound like a reasonable interpretation at all, and it doesn't seem like any reasonable understanding of what the parties contemplated in a contract that was supposed to begin on July 31 and completely end by September 30th. It was a 60-day agreement. Everything was supposed to be done fast. You had 30 days to initiate payment, whatever that means, and then 30 days after that, she was supposed to retire. I mean, it's quite clear everything was supposed to be done quite swiftly. Everybody was supposed to get in, get out. This was a settlement. The government didn't want any more of this case. It wanted to put Ms. Brown where she was entitled to be and then be done with it. And same with her. She didn't want to be employed. Everybody understood it was a bit of a fiction to re-employ her, but that was to put her into the position so that she could get the back pay that she deserved, so that she could get the annuity that she deserved. So all of this is quite confusing to me. Well, Your Honor, I think that to return to- Let's begin with the understanding of what does it mean to initiate payment in the government's view. It means to begin the process of making the payment possible. So paint a picture for me. What does that look like? Well, as some of the documents in this case make clear, there is a process within the Human Resources Department that the documentation of the plaintiff- So paint a picture. There's an HR employee sitting at his or her desk. Pulling documents from a file, but also reviewing them- And that fulfills the obligation under the settlement agreement? I believe that that first- They need to pull a file by August 30th, 2019. Well, I think you need to begin the process of calculating the payment, and that necessarily begins with pulling the file, certainly. Right. But it's not a matter of- So in the government's view, all they had to do by August 30th was pull a file. I think they had to begin by pulling the file. That's correct, Your Honor. But looking at the agreement, it's clear- What if I think that's an unreasonable interpretation? Well, I think- Doesn't this need to go back? Certainly the only remedy available, if in fact the court concluded that it was necessary, then it should be remanded. However, in this case, even if the court finds that the word initiate required some sort of payment, an interpretation that is not really consistent with what actually happened in this case, that was expected in this case, then there still is a question of whether the breach was material. And in this case, we say that it's not. In fact, what happened, Your Honor, the reason why Ms. Brown is in an unfortunate situation of being on retirement and relying upon a reduced retirement payment is that she elected to retire before these issues had been resolved, before the payment had been completed, and she knew that she was taking that risk. She was required to retire under the settlement agreement by September 30th, 2019. She was. She was required. And if she did not, then the government was going to terminate her. That's what it says in the settlement agreement. Actually, Your Honor, as you point out, the settlement agreement specifically provides a reaction to a lack of retirement, which did not happen here. So the remedy was not to stop any other activity aside from the government issuing a resignation announcement. But in this case, Ms. Brown did not retire on September 30th. Rather, starting on September 25th, her attorney and GSA were engaged. They were trying to work it out. They were trying to work it out. Where is the money? Where is the money? They were trying to work it out, Your Honor. And the GSA person said, we believe that payment has been initiated. It should be arriving, you know, at the next, you know, payment cycle. Your Honor. And then that obviously didn't happen. That obviously did not happen, and it's clear that there were some mistakes and misinformation that GSA conveyed to Ms. Brown. However. And then in October, the GSA point person said, oh, we need lots of information out of you before we're going to cough up the money. You've got to fill out a lot of forms. We never told you that, but that's what you had to do. In order for us to fulfill our obligations that were due by August 30th, we're now telling you all this interesting stuff about what you've got to do in order to get the money. GSA had reached the point in their process where they had gotten to the need for Ms. Brown to have input, and they reached out to her for that input. Again, it was not an ideal timing, I'm sure, but regardless, it was the GSA's obligation to get some information from Ms. Brown in order to complete processing her payment. And instead of providing it, she elected to retire. Now, she was entitled to do that if she wanted to do so. There is no term in the agreement that required Ms. Brown to retire on October 19th, 2019. That isn't there. So if one wants to rely on the plain language of the agreement, it says two things.  It doesn't say she should have. She agrees to resign effective September 30th. Yes. And if she has not retired or resigned on or before September 30th, the agency will process a notice of personnel action, standard form 50, indicating that the appellant has resigned September 30th. Except that the agreement also requires in paragraph 12 that it may be modified in writing, in which both parties were engaged in that process. And I understand that there was some frustration on Ms. Brown's part, reasonably, that that wasn't accomplished more quickly. But instead of attempting to finish that process and execute the modification, she elected to retire. And it's that decision that led most directly to her having to subsist on a lesser retirement annuity than she would have preferred. Counsel, we're reviewing a decision. And the decision held that the appeal was moot, right? And it was moot if it was moot because she got her payment, right? Yes, Your Honor. And so is that the case before us? It is the case before. And that's why the petitioner's request for specific performance is so misplaced. In this case, the government has performed. If it was a material breach, then is the case moot? No, it is not. If there's a material breach and the court finds that the government did not perform, then it is, in fact, not moot. However, again, assuming that the court agrees that either initiate payment was correctly interpreted by the agency, or excuse me, either there was substantial evidence supporting that interpretation, or that the breach was not directly arising from GSA's failure to follow some part of the agreement, then, in fact, we're back into the situation where the requested remedy cannot be conveyed because all of the performance due under the four corners of the settlement agreement has been performed. But this isn't a petition for enforcement of the settlement agreement, is it? Ms. Brown is seeking that the agreement be specifically performed. So that is the relief she's requesting. And that is the only relief really that the board could have delivered in this case. She chose not to go before the Court of Federal Claims, but instead chose the board, and that limits the relief that she had an opportunity to seek. But in this case, she is seeking to be reinstated. Ms. Brown was already reinstated pursuant to the appropriate paragraph in the settlement agreement, and she retired. She did that voluntarily. Ms. Brown is seeking back pay. She has already been paid all of the back pay that the agreement required that she be given. She's actually seeking back pay for the period since she retired until complete performance. And what her view is, the annuity itself has been paid, a term that doesn't appear in the agreement at all. The goal of Ms. Brown to use her back pay in partial payment for her annuity payment is not contemplated as a purpose or expressly as a term in the settlement agreement at all. And yet she is asking this court to provide back pay until the time Ms. Brown makes whole the annuity payment she wished to do, which is entirely outside the goal. But if we think there's a breach, I don't think this court would need to get to the remedy question. That's something that would be resolved on remand. Indeed, but I think the point, Your Honor, I'm trying to make is that even if the court's provided the court is persuaded that there is not a breach, then it should also understand that specific performance, as Ms. Brown requested, is simply not possible. And, in fact, she's asking that this court deliver terms that have no place in the settlement agreement at all, including she's asking that this basically two years of back pay be added to her settlement that isn't part of the agreement. She's also asking that GSA somehow refund $8,000 that currently is in the custodianship of OPM. GSA cannot return that money. She must seek it from OPM. So she is not seeking relief from the appropriate agency. Why is it that OPM possesses $8,000 of her money? Because when the back pay was processed, the amount of annuity for the period in which she retired wasn't properly handled. And, therefore, a check was delivered to OPM for greater than the amount then was actually owed. And as the administrative law judge concluded, the appropriate way to handle that was to reach out to OPM to address the return of that money. That was the path forward that Ms. Brown should have taken. Thank you, Counsel. Thank you, Your Honor. Ms. Riggs has some rebuttal time. Thank you. The government's argument that Ms. Brown elected to retire prior to receiving the back pay payment is a red herring in this matter. Even if she had retired on November 2nd, the day after receiving the back pay, we'd still be here today. Because GSA never fully processed the repayment to OPM as was required to do by the regulations and as it was laid out in the settlement agreement. It took them over a year to get that check, $32,000 check that was withheld from Ms. Brown's back pay, back to OPM. It took them even longer to get the individual retirement records to OPM so that Ms. Brown could re-retire with even the slightly higher annuity that she'd earned from the year and a half of service provided under the settlement agreement. But we would still be here today arguing about that because OPM had no record on November 2nd of Ms. Brown retiring and she wasn't able to receive her updated annuity and she wasn't able to make the payment, she wouldn't have been able to make the redeposit amount of the annuity at that date because OPM had no record of it. Now the agreement requires payment of $18,000. That was paid, right? For attorney's fees, yes. That was paid. The agency indicated that payment had been initiated on August 20th for both the back pay and the attorney's fees and the attorney's fees were paid two days later. That was a reasonable expectation of initiate payment and that we would receive it within days of that initiation. What provision of the settlement agreement was not complied with, other than your view of the word initiated? The part where the payment shall be, the agency agrees to pay, this is, I'm sorry, joint appendix at page 30, paragraph 2. The agency agrees to pay the appellant back pay, interest on back pay and other benefits in accordance with 5 CFR part 550. That was paid, right? It was paid. It was not properly processed in accordance with that regulation, though. Ms. Brown fully expected to retire, be able to retire on September 30th, 2019, with her new annuity of approximately $4,000 a month. Because the GSA did not properly process that payment or the back pay or the repayment to OPM, she could not do that. That was a material breach of the agreement. This agreement was set up specifically to promptly pay her, promptly have her retire again. This matter has always been about correcting her retirement. It has always been about correcting her retirement. When she was provided that opportunity where she would be able to make that repayment again before retiring, she settled the case. Had the agency not offered to settle it, she would have gone back to work and worked for another 10, 15 years, however long it took her to save that money. But when that opportunity came up, she took it. She expected the agency to fulfill its promises here. She's not seeking back pay, as the government alleges. She's merely seeking to be made whole and be put back in the position that she was. She would have been had the agency complied with its obligations in a timely manner pursuant to the agreement. She's not asking for back pay from the present day back to when she retired in December 2019? She's asking for an amount in the difference between the annuity she should have received and what she did receive. She just wants the difference in the annuity that she should have been getting and reasonably expected to be getting after this settlement agreement. She... But if the court does not feel that it can craft that remedy or should craft that remedy, we request that the matter be remanded to the board to craft that remedy and receive implementation of it. And I thank you for your time. If there's no further questions. Well, you said if we don't agree, we should remand. If we don't agree, what would the basis for the remand be? To craft the remedy. If you think it was not appropriate for this court to craft the remedy, we ask the board to remand it to the board for them to craft the remedy. But we think this court can craft the remedy as it did in Larry and would ask for a similar... It seems like there's a handful of options for what we could do. One is to say there was never an actual meaningful interpretation of the key phrase of the contract. So it needs to go back for that because, you know, we vacate and remand everything. We can, on the other hand, option two is say there was no interpretation, but what we do know is the government's interpretation is wrong and the right interpretation is something to do with getting all your ducks in a row with your third-party vendor. And now go back and figure out whether that's a material breach because that obligation was, in fact, breached. Option three is to say that was a material breach here because the whole point of this contract was to be over and done with within 60 days, and that clearly did not happen. But we then, you know, send it back for a remedy. Is that a question? And that's what we... Which one should we do? We submit that the court to option three, the latter option. Thank you. Thank you to both counsel. The case is submitted. Thank you.